UNITED STATES of America, Plaintiff,

v.

CITY OF CHICAGO, a Municipal Corporation, et al., Defendants,

Louis Arado et al., Intervenor-Defendants.

Renault ROBINSON and Afro-American Patrolmen's League, an Illinois not-for-profit Corporation, Plaintiff,

v.

James B. CONLISK, Jr., et al., Defendants,

Carolyn Burauer et al., Intervenor-Plaintiffs.

Tadeo Robert CAMACHO et al., Plaintiffs,

v.

CITY OF CHICAGO et al., Defendants.

Renault ROBINSON et al., Plaintiffs,

v.

William E. SIMON et al., Defendants.

City of Chicago, Intervenor-Defendant.

Nos. 73 C 2080, 70 C 2220, 73 C 1252 and 75 C 79.

United States District Court, N. D. Illinois, E. D.

March 31, 1976.

Order of Implementation May 27, 1976.

Philip B. Kurland, Norman J. Barry, Donald E. Egan, Alan L. Unikel, Rothschild, Barry & Myers, Chicago, Ill., for Louis Arado, John Minogue, James O'Neill, Martin Barrett, Richard Pekarek, William Kasniak, Thomas Reilly, Erwin O'Bartuch, Joseph McManus, Michael Chido, intervenor-defendants and Arado intervenors.

Richard Gutman, Mary L. Sfasciotti, Chicago, Ill. for Carolyn Burauer, Barbara Chiczewski, Sharon Doherty, Bonita Drefs, Frances Jamen, Hattie Knazze, Shirley Stapleton, and Pamela West, intervenor-plaintiffs.

Frank Cicero, Jr., Thomas A. Gottschalk, John P. Wilson, Jr., Gary M. Elden, Kirkland & Ellis, Chicago, Ill., James M. Johnstone, Kirkland, Ellis & Rowe, Washington, D. C., for Renault Robinson, and others.

Donald Pailen, Francis A. Cronin, Elaine C. Afable, Dept. of Justice, Washington, D. C., Ilana Diamond Rovner, Asst. U. S. Atty., Chicago, Ill., for the Government.

William R. Quinlan, Acting Corp. Counsel, Richard J. Phelan, Earl L. Neal, Sp. Counsel, Daniel R. Pascale, Ann Acker, Jerome A. Siegan, Roseann Oliver, Asst. Corp. Counsel, Chicago, Ill., for the City of Chicago, and others.

Michael L. Meyer, Barry S. Alberts, Schiff, Hardin & Waite, William J. McNally, Judith Bernstein, Chicago, Ill., for Camacho, and others.

Wayne B. Giampietro, John Ligtenberg, Lawrence Poltrock, Chicago, Ill., for intervenor-defendants Roy Isakson, Fred Sansone, Robert Buckner, Larry Payne, Martin Leal, George Flood, and others.

Judson H. Miner, Chicago, Ill., for intervenor-plaintiffs Willie L. Harris et al.

Perry L. Fuller, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for intervenor-defendants Nicholas McNamara et al.

William H. Sager, Chief Counsel, U. S. Office of Revenue Sharing, Washington, D. C., for O.R.S.

John F. McCarthy, McCarthy & Levin, Chicago, Ill., for amici curiae, Chicago Bar Assn., Chicago Crime Commission, and The Civic Federation of South East Chicago.

Gerald J. Muller, Chicago, Ill., for Tadeo Robert Camacho.

## MEMORANDUM DECISION

MARSHALL, District Judge.

On February 2, 1976, we entered a final decree pursuant to Rule 54(b), Fed.R.Civ.P., which adjudicated certain of the issues in these consolidated cases. No party sought modification or amendment of the decree. Rule 59(a) and (e), Fed.R.Civ.P. Appeals have been taken by the Buraurer intervening plaintiffs and the Arado and Isakson intervening defendants and we are advised that those appeals are to be heard during the week of June 14.

On February 17, the Arado intervening defendants (who hold places on the 1973 sergeants promotion list) moved to stay that portion of Paragraph 9(b) of the final decree which authorizes the "Chicago defendants . . . to make permanent the temporary promotions to the rank of sergeant which were made pursuant to Part III of the Court's Order Regarding Selection Procedures entered on April 17, 1975. . . . ." Rule 8(a) Fed.R.App.P. On March 17 the City responded to that motion stating that it did not oppose it so long as a stay would not "prejudice . . . its program for release of revenue sharing funds."

On February 17 the City sought and obtained permission to make public the current status of its new methods of selecting police officers which have been long awaited and which have been conducted to date pursuant to Parts II and IV of the Order Regarding Selection Procedures entered April 17, 1975. We say "current status" because all of the steps in the new selection process contemplated by the April 17 order have not been completed and the parties to these proceedings (other than the City defendants) have not been afforded the oppor-

tunity to submit objections to the final list and the methods utilized in arriving at it, as contemplated by Paragraph E of Part II of the April 17 order.[1] Here is it not amiss to observe that while that order does not appear on its face to have been agreed to by the parties (i. e., it does not bear the written approval of counsel) as a matter of fact the provisions of Part II relating to the selection of police officers were agreed to by all of the plaintiffs and the City defendants.

In any event, the City has now produced a group of rosters based upon the pass/fail results of a written examination given April 19, 1975 and oral examinations given to those who passed the written examination. Those rosters break down as follows:

| | Candidates for Written Exam | Passed Written Exam | Well Qualified | Qualified | Conditionally Qualified | Not Qualified |
|---|---|---|---|---|---|---|
| White Male | 6805 44.1% | 6170 49.5% | 311 50.4% | 927 50.0% | 1644 50.5% | 1990 47.8% |
| Black Male | 3422 22.2% | 2136 17.1% | 130 21.1% | 359 19.4% | 551 16.9% | 667 16% |
| Spanish Surnamed Male | 994 6.4% | 650 5.2% | 35 5.7% | 128 6.9% | 155 4.8% | 222 5.3% |
| Other Male | 197 1.3% | 149 1.2% | 9 1.5% | 19 1% | 40 1.2% | 45 1.1% |
| Total Male | 11418 74.1% | 9205 73.1% | 485 78.6% | 1433 77.3% | 2390 73.4% | 2824 70.2% |
| White Female | 2206 14.3% | 2078 16.7% | 76 12.3% | 266 14.4% | 517 15.9% | 775 18.6% |
| Black Female | 1585 10.3% | 1124 9.0% | 52 8.4% | 134 7.2% | 315 9.7% | 407 9.8% |
| Spanish Surnamed Female | 163 1.1% | 118 .9% | 3 .5% | 16 .9% | 30 .9% | 41 1% |
| Other Female | 46 .3% | 38 .3% | 1 .2% | 4 .2% | 5 .2% | 18 .4% |
| Total Female | 4000 25.9% | 3358 26.9% | 132 21.4% | 420 22.7% | 867 26.6% | 1241 29.8% |
| Grand Total | 15418 | 12563 | 617 | 1853 | 3257 | 4065 |

Paragraph 17 of the final decree provides:

17. Within 30 days of the entry of this decree, all of the parties shall submit to procedures they have submitted to the court and all the parties pursuant to Paragraph II(D). In the event objections are so submitted, the court shall enter an order or orders in respect thereto within 19 days after compliance with Paragraph II(D) and if no order is entered the defendants will be free to proceed to make police officer appointments from the final police officer eligibility list and in accord with the methods and procedures they have submitted to the court and all the parties pursuant to Paragraph II(D).

1. E. Within 14 days after compliance with Paragraph II(D) any party may submit to the court in open court with notice to counsel for all other parties written objections to defendants making police officer appointments from the final police officer eligibility list. Such objections must be specific and must conclude with a prayer for specific appropriate relief. If no objections are so submitted, defendants will be free to proceed to make police officer appointments from the final police officer eligibility list and in accord with the methods and

the Court a proposed plan and timetable for the release of all or portions of the Revenue Sharing entitlements due to the City of Chicago. The plan shall propose a timetable for and the extent to which the Chicago defendants must comply with the requirements of this decree in order to obtain a release of some or all of the Revenue Sharing Entitlements due to the City of Chicago. The plan shall also include a specific statement by the ORS defendants as to their intent respecting past Revenue Sharing payments made to the City of Chicago.

On March 3 the United States, the Robinson plaintiffs and the City filed their proposals for the release of revenue sharing funds. On March 8 the Isakson intervening defendants (who hold places on the 1971 patrolman roster) filed a motion to stay or modify portions of the final decree and suggestions regarding the release of revenue sharing funds. On March 9 additional suggestions were filed by the United States and the City. March 12 brought response from the Arado intervening defendants and March 17 an additional submission by the City.

### The City's Proposal

The City's proposal, in chronological order, is this:

March 8, 1976: the City will[2] hire 200 police officers pursuant to the agreed Interim Hiring Order of December 16, 1974. Under the terms of that agreed order, this group of officers should have been hired on or about February 2, 1975.

April 5, 1976: the court will release approximately $64,000,000 in impounded revenue sharing funds and authorize payment of the regular April 5 installment of $18,-500,000.

April 26, 1976: the City will hire an additional 200 police officers pursuant to the Agreed Interim Hiring Order of December 16, 1974. This group should have been hired on or about March 2, 1975.

June 14, 1976: the City will tender to the court a list of not less than 200 persons "eligible to be hired as police officers from the list designated as 'well qualified' pursuant to the selection procedure implemented by the 1975 Police Officers Examination." (City's Proposal filed March 3, 1976, pp. 4–5.) It is unclear whether this list will reflect the racial/sexual mix in the chart, *supra,* or the hiring ratios prescribed by the final decree, although we do note that in respect to hiring from this list the City proposed on March 3 that "the requirement for a certain percentage of women as expressed in the Court's opinion of January 5, 1976 [and ¶ 8(b) of the final decree of February 2, 1976] shall not be applicable." (*Id.* p. 7.) We also note that in its March 9 proposal the City urges approval of the racial/sexual mix of the new list, contending that such would not constitute a modification of the final decree because "[o]n the date the decree was entered the Court had no evidence as to the effects of the 1975 police officer examination." (City's Proposal filed March 9, 1976, p. 2.) To date the other parties have not had the opportunity to challenge the 1975 selection procedures because the City has not made its final submission under Paragraph D of Part II of the order of April 17, 1975.

It is also unclear whether the persons on this proposed June 14 list will have undergone background and psychological testing as contemplated by the new methods of selection. Finally, it is unclear whether this submission will activate the objection procedures provided for in Paragraph E of Part II of the April 17, 1975 order, set forth in Note 1, *supra.*

July 5, 1976: the court will release an additional $16,000,000 in impounded revenue sharing funds and authorize the payment of the regular July 5 installment of $18,500,000.

July 6, 1976: the City will hire 100 police officers from the list tendered to the court on June 14.

---

2. Although no formal certification of this hiring has been submitted, we assume it has been done.

August 16, 1976: the City will hire the remaining 100 police officers from the list tendered to the court on June 14.

September 10, 1976: the City will tender to the court another list of 200 persons eligible to be hired as police officers from the list designated "well qualified." The uncertainties expressed regarding the June 14 tender are equally applicable here. Hopefully, however, this submission would not reactivate the objection procedures of Paragraph E of Part II of the April 17, 1975 order.

September 27, 1976: the City will hire 100 police officers from the list tendered to the court on September 10.

October 5, 1976: the court will release the balance of $16,000,000 of impounded revenue sharing funds and authorize payment of the regular October installment.

November 27, 1976: the City will hire 100 police officers from the list tendered to the court on September 10.

In regard to sergeants, the City will make permanent the 176 temporary appointments made pursuant to Part III of the order of April 17, 1975 and add thereto another 60 similarly selected. (City's Proposal filed March 9, p. 1.) By October 1 the City proposes to submit to the court a "Similar non-discriminatory selection device for sergeants. . . ." (*Id.* p. 2.)

In sum, the City proposes release of $64,-000,000 (or ⅘) of the impounded revenue sharing funds and restoration of regular revenue sharing payments because it has, on March 8, 1976, hired the 200 police officers it agreed in December 1974 to hire by February 2, 1975. It further proposes release of the balance of the impounded funds on its assurance that it will complete the performance of the December 1974 interim hiring agreement by April 26, proceed to complete the implementation of its new hiring procedures (which have been two years in coming and which, at the City's behest, have not been subjected to any public, judicial or adversary scrutiny) and make permanent certain temporary promotions to sergeant. Of course, the latter is the subject of the Arado intervening defendants' appeal and motion to stay. Thus, in the main, the City continues to urge a pay now—perform later philosophy.

### The Robinson Plaintiffs' Proposal

For their part, the Robinson plaintiffs begin their proposal by spreading of record certain statements which they say have been made by representatives of the City and which they urge constitute public denunciation of the court and open defiance of the decree. Such arguments, *de hors* the record, are impertinent and have no place here. To date these cases have been heard and decided in the courtroom and they will continue to be.

Next the Robinson plaintiffs make a series of factual assertions and arguments (again largely beyond the record) ranging from alleged press conferences to the borrowing of funds by the City to acts of retaliation and harassment against the Afro-American Patrolmen's League to the City's failure to develop a new sergeant examination to its creation of a new rank of patrol specialists, etc.

■ There follows a carefully drafted ten page "plan ·and timetable" which, if adopted, would involve virtual monthly supervision by the court of the Chicago Police Department for the next two years. We decline to become immersed in the supervisory details proposed by the Robinson plaintiffs.

### The Isakson Intervenors

■ This group of men who hold places on the 1971 patrolman roster have changed counsel. As we noted in our memorandum decision of January 5, under their former counsel they seemed to shift their position between the commencement of the trial and its conclusion. Now they take an interesting new tack: the release of the revenue sharing funds should be conditioned on the City's agreement to appoint from the 1971 roster until it is exhausted. True, we gave the City that option in Paragraphs 7 and 8(b) of the final decree. But because of the age of that roster and the repeated repre-

sentations by the City that its new methods of selection were imminent, we declined to make its use mandatory other than as the City had agreed in the Interim Hiring Order of December 1974. We again decline to require the use of that roster by the City. In this regard we also deny the Isakson defendants' motion to stay and their motion to modify the final decree. In respect to the latter, it is untimely under Rule 59, Fed.R.Civ.P. and no showing has been made which would warrant consideration of the motion under Rule 60(b), Fed.R.Civ.P.

### The Government's Proposal

The most meaningful proposal has come from the United States. The Government now fully endorses the continued withholding of revenue sharing funds until the City takes those steps spelled out in the decree to end its prior discriminatory practices and the effects of those practices. The Government proposes a timetable under which current payments will resume July 5, 1976 if, by June 1, the City has fully complied with the Interim Hiring Agreement, submitted a detailed statement of its budgeted patrol and sergeant needs for the years 1976 and 1977, the proposed sources for filling those needs and has submitted the final results of its new methods of selecting patrol officers and the bases thereof. Thereafter, the regular payments will continue and impounded funds which, after April 5 will amount to approximately $114,000,000, will be disbursed in equal installments of 25% on October 5, 1976 and January 5, April 5 and July 5, 1977, provided the City is in compliance with the final decree. In addition, the Government has now expressly disclaimed any intent to seek repayment of or make downward adjustments in respect to prior revenue sharing payments under 31 U.S.C. § 1242(a) and (c) and 31 C.F.R. § 51.32(f)(v).

We have two serious misgivings with the Government's proposal. The first is its insistence that the City develop plans for a new sergeant examination by September 1 and administer it by December 1. An appeal has been taken by the Arado defendants from those portions of the final decree relating to sergeants. While we remain confident of the correctness of the conclusions we have reached in that regard, it strikes us as potentially improvident for the City to be put to the time and expense inherent in developing a new method of selecting sergeants until the validity of the 1973 examination has been finally adjudicated. Of course it may develop a new method for selecting sergeant candidates if it chooses. But a stringent timetable now is not called for. That can be considered after the Court of Appeals has ruled.

Our second concern with the Government's proposal is the suggested imposition of minimum numbers of hirings and promotions (in addition to those heretofore agreed to by the City in the Interim Hiring Order of December, 1974). Thus it urges that the City be held to hire 400 additional police officers by December 1, 1976 and 800 during 1977 and to promote 200 permanent sergeants by December 1, 1976 and 100 during 1977. While we recognize that the City has frequently been heard to say that it suffers from a shortage of patrol officers and sergeants, its refusal to abide by the terms of the Interim Hiring Order tends to belie at least the former. Thus, we do not know the City's needs in this regard. In these circumstances we question the propriety of the present establishment of fixed benchmarks of compliance.

This is not to say that numerical hiring requirements in cases of the nature of these cannot be established. We recognized that they can at pages 53–54 of our memorandum decision of January 5. Nor are we unmindful of the City's course of non-action in the face of decrees entered by other judges of this court in civil rights litigation involving the Chicago Fire Department and the Chicago Housing Authority. But under the Government's proposal, the City must make known its patrol and sergeant needs by June 1, as, indeed, it has done to some degree in its own pending proposals. June 1 will be soon enough to look at the desirability of setting hiring goals.

■ Thus we approve the Government's proposed plan for the release of revenue

sharing payments with the exceptions we have noted. Counsel for the Government are directed to prepare an order in conformity herewith which will be entered in implementation of the decree of February 2, 1976 and not as a modification thereof.

We believe an additional comment should be made with respect to compliance with the decree. The question is implicit in the papers submitted by the parties as to the hiring ratios which will be applied in respect to persons selected as a result of the City's new methods for selecting police officers. Of particular significance is the ratio for females. The final decree provides for 16% females. This figure was arrived at in light of the earlier agreement of the parties in December 1974, and in light of the fact that the information contained in the submissions which had been made to us regarding the new methods for selecting police officers was, as of the date of the decree, held *in camera*. In view of the fact that that information is now a matter of record, some adjustment in the female ratio may be called for when the final results of the new methods of selection are known and the parties have been afforded the opportunity contemplated by the order of April 17, 1975 to inquire into them.

We do not, however, presently foresee any modification of the one-to-one ratio of black and Hispanic males to white males. In this regard we note that the Court of Appeals for this Circuit has recently approved such a black/white hiring ratio on a temporary injunctive basis for certain skilled civil service positions in the City of Milwaukee. *Crockett v. Green*, 534 F.2d 715 (7th Cir. 1976), *affirming* 388 F.Supp. 912 (E.D.Wis.1975). There the Court of Appeals said,

. . . Use of mathematical ratios on a limited basis to correct past discrimination is not a violation of equal protection (citing cases). In the present case, the district court ordered one-to-one ratio hiring for a limited period as part of a broad equitable remedy designed to eradicate defendants' discriminatory employment practices. Such an order was within its

discretion, and similar ratio systems have been employed in past § 1983 cases. (Citing cases.) 534 F.2d p. 718.

 We recognize that the scope of review of a preliminary injunction is somewhat more restricted than that of a permanent injunction. But a constitutionally impermissible standard is just that whether it be imposed preliminarily or finally. The clear teaching of *Crockett* and the cases there cited together with the cases cited at pages 52–54 of our memorandum decision of January 5, 1976 is that hiring ratios may be used in proper circumstances to eradicate the effects of prior discrimination. To the present nothing of consequence has been done by the City to eradicate those effects. Should the circumstances change, the final decree is subject to modification by its own terms.

Finally, we turn briefly to the motion of Louis Arado, et al., to stay that portion of Paragraph 9(b) of the decree of February 2, 1976 which authorizes the Chicago defendants to make permanent the temporary promotions to the rank of sergeant. The City has announced it intends to do just that; indeed it has proposed an increase of 60 in such appointments.

As we recall, when the Arado motion was presented we expressed the view that it had merit. We granted the City the opportunity to respond upon its assurance that no action would be taken by it until the motion could be ruled on. After consideration of the memoranda which have now been submitted we have concluded that, in fairness to all concerned, the temporary sergeants should not be made permanent until the Arado appellants have had their day in the Court of Appeals.

The Arado brief of March 12 appears, however, to expand the scope of the motion. After a bit of hyperbole in which we are told that we seem "disposed to defer totally to the choice of the Chicago defendants" (p. 3), the brief urges that it would not "be 'unfair' or 'inequitable' to appoint, after adjustment pursuant to the decree, whites and minorities who passed a civil service promotional exam and who had every right

to expect promotion. . . ." (Pp. 3–4.) Then, shifting gears, the brief urges "this Court to rule on our motion and to stay *any* permanent [sergeant] appointments pending appeal." (P. 4.)

■ On balance, and despite the fact that the brief enlarges on the motion,[3] we have concluded that a stay of all of Paragraph 9(b) of the decree is equitable. Accordingly an order will be entered to that effect.

### ORDER OF IMPLEMENTATION

These cases having come before the court for a consolidated trial on the merits, and the court having made findings of fact and conclusions of law in its Memorandum Decision of January 5, 1976 and having entered a final decree pursuant to Rule 54(b), Fed. R.Civ.P., which adjudicated certain issues in these consolidated cases, and the court having in its Memorandum Decision of March 31, 1976 (1) denied the motion of intervenor-defendants *Isakson, et al.,* to stay or alternatively modify the final decree of February 2, 1976, (2) granted the motion of intervenor-defendants *Arado, et al.,* to stay Paragraph 9(b) of the final decree pending appeal, and (3) approved the proposed plan for release of Revenue Sharing payments submitted by the United States with noted exceptions, and the Court being of the opinion that this order should be entered in implementation of the decree of February 2, 1976:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. To enable better implementation of the obligation of the United States under Paragraph 16 of the February 2 Decree to report to the court on the progress toward compliance made by the Chicago defendants with that Decree and to report any indication or evidence of non-compliance made by the Chicago defendants with the requirements of the Act or the Decree, and in order to better fit the filing of reports by both the Chicago defendants and the United States into the schedule below, the quarterly reports required of the Chicago defendants by Paragraph 11 of the February 2 Decree together with all documentation necessary to show performance of compliance as set forth below shall be filed with the court and served on counsel for plaintiffs no later than the first day of the months of June, September and December 1976 and March and June 1977; and that the quarterly reports required of the United States by Paragraph 16 of the February 2 Decree shall be filed with the court and served on all counsel of record by the 25th day of the months of June, September and December 1976 and March and June 1977. Such reports of the United States shall state whether or not it has evidence of violations by the City of the Decree. Any evidence of non-compliance offered by any private party should also be filed with the court and served on all counsel of record by the first day of those months. If the parties disagree as to the status of compliance, the matter shall be submitted to the court for resolution.

2. In order to obtain release on July 5, 1976 of the amount of the scheduled payment then due, the Chicago defendants shall by June 1, 1976 certify in writing and/or demonstrate to the United States (and the court) through the quarterly report due from the City on June 1, 1976, or by other appropriate documentation, that it has achieved the following:

 a. Defendants shall have performed the balance of the Interim Hiring Agreement and Order approved and entered by this court on December 16, 1974 in accordance with the requirements of Paragraph 6 of the February 2 Decree, and shall have reported the results of such performance timely as provided for in Paragraph 11 of the Decree.

 b. Defendants shall have submitted a statement to the court with copies to counsel for plaintiff disclosing the number of existing budgeted vacancies in the Patrol Officer and Sergeant ranks. The statement shall include a timetable projecting the number of Patrol Officer vacancies it wishes to fill during the calen-

---

**3.** The City has responded to the brief.

dar years of 1976 and 1977. Such a statement should indicate:

(1) the source of applicants to be used to fill Patrol Officer vacancies;

(2) the number and size of the training classes to be established in 1976 and the dates for the commencement of such training classes.

c. Defendants shall have completed the scoring of the 1975 Police Officer's Examination and disclosed the final results to plaintiffs and the court as soon as such final results are known.

d. Defendants shall have disclosed to the court and plaintiffs the new criteria and the process and procedure for conducting background investigations and psychological examinations of applicants who took the April 1975 Police Officer's Examination.

e. Defendants shall have submitted a list to the court with copies to counsel for the United States of the names and position on the 1971 Patrolman's Eligibility List of all persons who were disqualified by the Civil Service Commission medical/physical examination who have not been reexamined in accordance with the procedures set forth in the Partial Consent Decree in *Camacho v. City of Chicago.* A separate list of all persons who have to date been so reexamined shall have been submitted indicating the names, addresses, race, results of such re-examination for each such person, whether each such person has been employed as a police officer, and the reasons for not having employed any person who was successfully re-examined.

f. Defendants shall have submitted a list to the court with copies to counsel for the United States of the names and position on the 1971 Patrolman's Eligibility List of all persons who were disqualified by the former background investigation procedures which were enjoined by this court.

g. Defendants shall have made timely submissions of all compliance reports required by the February 2 Decree.

h. Defendants shall comply fully with appropriate discovery requests by the United States necessary to seek awards of backpay and, where appropriate, retroactive seniority adjustments for victims of defendants' unlawful employment practices.

3. In order to obtain release on October 5, 1976 of the amount of the scheduled payment then due, together with twenty-five (25) percent of those funds currently under restraint, the Chicago defendants shall by September 1, 1976 certify in writing and/or demonstrate to the United States (and the court) through the quarterly report due from the City on June 1, 1976, or by other appropriate documentation, that it has achieved the following:

a. Defendants shall have certified after performance of the Interim Hiring Order and Agreement any minimum number of court approved or court ordered applicants for training as police officers in accordance with the hiring goal required by Paragraph 8 of the February 2 Decree.

b. Defendants shall continue to make timely submissions of all reports required by the February 2 Decree.

4. In order to obtain release on January 5, 1977 of the amount of the scheduled payment then due together with twenty-five (25) percent of those funds currently under restraint, the Chicago defendants shall by December 1, 1976 certify in writing and/or demonstrate to the United States (and the court) through the quarterly report due from the City on June 1, 1976, or by other appropriate documentation, that it has achieved the following:

a. Defendants shall continue to certify any minimum number of court approved or court ordered applicants for training as police officers in accordance with the hiring goal required by Paragraph 8 of the February 2 Decree.

b. Defendants shall continue to make timely submissions of all reports required by the February 2 Decree.

5. On April 5, 1977 and July 5, 1977 the amount of the scheduled payments then due

will be released together with release of the balance of the funds currently withheld at the rate of one half on April 5 and the remaining one half on July 5, 1977, if the defendants continue to make timely submissions of all reports required by the February 2 Decree, continue in compliance with the February 2 Decree and continue to comply with any court approved or ordered hiring plans for 1977.

6. The motion of intervenor defendants *Isakson, et al.,* to stay or alternatively modify the final decree of February 2, 1976 is denied.

7. The motion of intervenor defendants *Arado, et al.,* to stay Paragraph 9(b) of the final decree of February 2, 1976 pending appeal is granted.

8. This order shall remain in effect until further order of this court.